**BEFORE THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NIRMAL SINGH,<br>      Plaintiff, | 1500 Mass. Ave., Apt 36<br>Washington, DC 20005 | |
|    V. | | 1:16-cv-922 |
| JOHN F. KERRY, in his official<br>capacity as Secretary of State, | U.S. Attorney's Office<br>555 4th Street, N.W.<br>Washington, DC 20530 | |
| RICHARD RAHUL VERMA,<br>in his official capacity as<br>Ambassador to India, | Chantipath, Chanakyapuri<br>New Delhi - 1100-21<br>India | |
| CONSULATE GENERAL, New<br>Delhi, India, in official capacity | Chantipath, Chanakyapuri<br>New Delhi-1100-2<br>India | |
| CONSULAR OFFICER, New<br>Delhi, India, in official capacity | Chantipath, Chanakyapuri<br>New Delhi-1100-21<br>India | |
| CONSULAR OFFICER, New<br>Delhi, India, in official capacity | Chantipath, Chanakyapuri<br>New Delhi-1100-21<br>India | |
|     Defendants. | | |

COMPLAINT TO COMPEL VISA APPLICATION ADJUDICATION

Steffanie J. Lewis
The International Business Law Firm, PC
1915 Eye Street NW, Suite 500
Washington DC 20006-2118
Telephone: 202 296 1111
Facsimile:   202 296 1175
Email: slewis@iblf.com

<u>COMPLAINT</u>

Plaintiff Nirmal Singh, ("SINGH"), a legal permanent resident of the United States, brings this Complaint in the form of mandamus against CONSULAR OFFICERS #1 and #2, the CONSULATE, the U.S. AMBASSADOR to India, and the U.S. SECRETARY OF STATE for a just visa adjudication and states the following:

<u>NATURE OF THE ACTION</u>

1.      This action follows and supplements <u>*Kerry v. Din*</u>, 576 U.S. _____ (2015).  The issues involve marriage and family as a right or liberty interest, or even more generally, a freedom of personal choice in matters of marriage and family life protected by the Constitution against intentional misconduct and procedural due process violations in immigrant visa processing.  SINGH asserts that the resulting visa denials were arbitrary, capricious and not based on any material facts.

2.      Singh, the Plaintiff, challenges the intimidation and threats used to force his younger daughter to sign a statement she had repeatedly denied, a statement contrary to multiple official documents subsequently provided to the Embassy, a statement her older brother refused to sign, and a statement bare of any supporting evidence.  The involuntary statement by that daughter, Gurwinder Kaur, falsely confessing, is the sole alleged basis for denying visas to SINGH's family.

3.      SINGH has a statutory right to consular processing of his dependent family, a right derived from the approval of his labor-based petition, which provided immigrant visas so that his family might join him in the United States.

4.     This case implicates the illegal conduct of U.S. consular officers, inducing and attempting

to induce false confessions, and a subsequent cover-up or ill supervision by supervisory

personnel of the U.S. Embassy who, after having received tens of official documents

rebutting misrepresentation, failed to require evidence from the adjudicating consular

officer to support his finding of misrepresentation, or to produce evidence in response to

appropriate inquiry.

5.     One can only speculate as to the reasons for the Embassy's improper intimidation.   It is

perhaps likely that a possible investigation by the Embassy confused SINGH's family

with that of his co-resident brother-in-law's family.   Perhaps that unwitting error formed

the basis for their 2010 coercive certainty and egregious actions against a young woman

and her illiterate mother.   In light of all the additional documentation submitted after

2010, the final visa denials in 2013 can only have been rendered in bad faith.

6.     The solution is simple.   The truth.   The U.S. can reverse its decision or produce the

"evidence" that it used to contradict and nullify the birth certificates, school records,

government census, medical records as well as the affidavits of the officials of the village,

all of which Plaintiff submitted to the USCIS and the Embassy in support of the true birth

dates of his children.   Remand would enable this correction.

## PARTIES

7.     <u>Plaintiff, Nirmal SINGH</u>[1] is a husband and father trying to reunite his family.   He married

Surjeet Kaur in 1983.   In traditional manner, Surjeet left her family home and joined the

---

[1] "SINGH" is understood as "SINGH, through counsel" in all communications with DHS
and DOS agencies reported in this complaint.

Suchha Singh family home in the village of Chimmo Tehsil Ratia District, Fatehabad

(Haryana).  In 1984, during "Operation Blue Star" when the Indian Army sacked the Sikh

Holiest Shrine in Amritstar, SINGH's father, Suchha Singh, was killed leaving his wife,

Gian Kaur, as head of the customary joint family.  There, Jasveer Kaur was born on June

1, 1986, Kulwant Singh on  September 4, 1987, Gurwinder[2]  Kaur on March 12, 1989,

and Sukhwant Singh on April 10, 1990.  Currently, Gian Kaur, SINGH's family and his

brother's family all live together as a joint family in the village of Chimmo.

8.      SINGH practices the Sikh religion.  When his children were all under 8 years of age, and

within days of having been arrested in a political demonstration for Sikhs, SINGH fled

India in December 1993.

9.      SINGH entered the United States in December 1993, filed for asylum in February 1994.

He included the names of his wife and children on his asylum application, anticipating

their following to join him in the United States.  Having received no notice to appear in

court, SINGH failed to appear in immigration court to present his asylum claim.

Virtually lacking any English language or understanding of the system, SINGH continued

to work as a speciality Indian cook, sent money home to his family and was removed *in*

*absentia* in 1994.

10.     In 1999, SINGH paid school fees for all of his children to attend Samrathal High School

Sadapur for one year.  Each attended the school from April 17, 1999 to March 31,  2000.

(School records affirming children's ages were subsequently obtained, submitted.) That

year, SINGH heard that a new U.S. law was coming (amendment to 8 CFR 245(i)).  After

---

[2]  Gurwinder is also spelled "Gurvinder" in various documents in the record.

speaking about it with his employer, SINGH hoped that his children might study in the United States the following year.

11.     In April 2001, an Indian restaurant dba *Bombay Palace* identified SINGH as its intended employee in an application to the Department of Labor.  On its approval, *Bombay Palace* petitioned for an immigrant visa for its intended employee, SINGH, and his dependant wife and children.  The *Bombay Palace* petition (EAC-04-169-51876) was approved on August 20, 2004.  On that date, all SINGH's children were unmarried under the age of 21 years old.  The eldest, Jasveer, had just turned 19 years of age.  By reason of the Child Status Protection Act ("CSPA"), the ages of SINGH's children were fixed as of this date, and immigrant visas were immediately available to his family members.

12.     SINGH filed an Application to Adjust to Permanent Resident Status on June 9, 2005, identifying his wife and four children as dependents following to join him.  At the time of his filing Form I-485, an immigrant visa was immediately available to SINGH and his family.  His children were minors.  Jasveer, the eldest, had just turned biologically 20 years of age but remained 19 years old as defined under the CSPA.

13.     At his adjustment of status interview with USCIS on June 5, 2006,  SINGH was detained by ICE as an absconder for having been removed *in abstentia* on December 29, 1994.

14.     SINGH and his employer filed to reopen his deportation proceeding based on lack of notice, but, when his case was successfully reopened, SINGH could not adjust his status to that of a U.S. lawful permanent resident because an immigration visa was no longer immediately available to him.  There had been a retrogression in the dates that determine visa availability.  This retrogression did not affect the fixed CSPA ages of his children.

15.    When a visa again became available, on January 22, 2008, the Immigration Judge

adjusted SINGH's status telling him that now his wife and unmarried children "might join

him in the United States."

16.    Promptly, SINGH filed Form I-824 with the USCIS requesting that the Department of

State effect the follow-to-join opportunity for his family.  On June 2, 2009, USCIS

approved the I-824.  Finally, having been separated from his family for 15 years, SINGH

was able to begin his family's consular processing through the National Visa Center

("NVC").

17.    Defendant John F. Kerry, predecessor or successor, is the duly appointed and confirmed

Secretary of State for the United States.  In that capacity, Secretary Kerry is the head of

the U.S. Department of State and responsible for setting and overseeing implementation

of the policies and procedures employed by the agency and all its various subdivisions,

including the Bureau of Consular Affairs, and the overseas posts and embassies of the

United States.  Defendant Kerry is sued in his official capacity.

18.    Defendant RICHARD RAHUL VERMA , predecessor or successor in office, is the

United States Ambassador to India, appointed by President Barack Obama, confirmed by

the U.S. Senate and sworn in by Secretary of State.  All officers function under the

guidance and supervision of the Ambassador.  Decisions are taken under the instructions

and supervision of the Ambassador.  Norms are set under the instructions and supervision

of the Ambassador.   The Ambassador is assisted by the Consulate General who handles,

in greater detail and more directly, internal embassy duties related to the issuance or

denial of visas, but it is the ambassador who is officially the chief of the mission and top-

ranking embassy official, and generally responsible for the conduct of embassy personnel. Ambassador Verma is sued in his official capacity.

19.   Defendant CONSULATE GENERAL , predecessor or successor in office, New Delhi, India, assists the Ambassador and directly handles the internal embassy duties related to the denial of immigrant visas.  He is sued in his official capacity.

20.   Defendant CONSULAR OFFICER #1, predecessor or successor in office, New Delhi, India, interviewed Kulwant, SINGH's elder son.  Consular officers are defined in relevant part by the Immigration and Nationality Act as "any consular, diplomatic, or other officer or employee of the United States designated . . . for the purpose of issuing immigrant or nonimmigrant visas."  8 U.S.C. §1101(a)(9).  He is sued in his official capacity.

21.   Defendant CONSULAR OFFICER #2 or successor in office, New Delhi, India, interviewed SINGH's daughter Gurwinder and her mother, Surjeet Kaur in a separate room in 2010, and at the Embassy window in 2013, and is presumed to be the adjudicating officer for the Embassy.  He is sued in his official capacity.

STANDING

22.   SINGH enjoys standing under Article III of the Constitution as having suffered injury-in-fact, _Valley Forge Christian College, v. Americans United_, 454 U.S. 464 (1982).  Under 5 USC §702, he is in the interest zone of an employment-based statutory grant by which his family can follow-to-join him in the United States, _Association of Data Processing Service Organizations, Inc. V. Camp_, 397 U.S. 150 (1970).  He values being a lawful permanent resident of the United States, where he has worked for twenty-two years to

enable his family to enjoy and share the values of this country and his employment is in the United States.  See *Warth v. Seldin*, 422 U.S. 490 (1975).

23.     SINGH is individually being harmed by being deprived of life with his family as a resident of the United States.  SINGH's interest in his family receiving a bona fide interview is consistent with the purpose implicit in the statute, i.e. to determine if a family member is eligible to follow-to-join.  *NCUA v. First Nat'l Bank*, 522 U.S. 479(1998).

## JURISDICTION AND VENUE

24.     This Court enjoys subject-matter jurisdiction pursuant to 28 U.S.C. Section 1331 (federal question jurisdiction) and Section 1361(district court jurisdiction) ; and 5 U.S.C. § 702 (right of review and the waiver of sovereign immunity), and personal jurisdiction by reason of the residence of the Plaintiff and the agency Defendants.

25.     Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The Fifth Amendment of the Constitution provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."  The Fourteenth Amendment provides, " nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Amendment X. (U.S. district court's original jurisdiction).

26.     SINGH has a protected right or liberty, or even more generally, a freedom of personal choice in matters of marriage and family life.  "Freedom of personal choice in matters of marriage and family life is, of course, one of the liberties protected by the Due Process

Clause." *Bustamonte* v, Mukaasey, 531 F.3d 1059, 1062 (9t Cir. 2008) referencing

*Cleveland Bd. of Educ. v LaFleir*, 414 U.S. 632 (1974).   The Supreme Court deemed

"straightforward" the notion that "[t]he Due Process Clause provides that certain

substantive rights —  life, liberty, and property —  cannot be deprived except pursuant to

constitutionally adequate procedures".   *Bustamonte* at 1062 citing *Cleveland Bd. Of Educ.*

*V. Loudermill,* 470 U.S. 532 (1985);   In deciding *Kerry v. Din*, 576 U.S. ____ (2015),

four Justices found that Din possesses the kind of "liberty" interest,  marriage, to which

the Due Process Clause grants procedural protection, and only three Justices found that

Din had no protected liberty interest.  Incorporated herein by reference is Justice Breyer's

extensive reasoning supporting Din's right to procedural protection is on point in

establishing SINGH's protected liberty to which procedural Due Process protection

attaches.

27.     SINGH's protected freedom of choice in family matters outweighs the government's

interest of protecting the details of consular officers' adjudicatory process, especially

where unlawful coercion and bad faith actions are alleged.  By contrast, the Din court

weighed protected liberty in marriage against protecting the nation against terrorism, ie.

national security interests which require enhanced secrecy and administrative obscurity.

28.     The constitutional protection extends to SINGH, an employment-based U.S. lawful

permanent resident residing and working in the District of Columbia.  "No person shall"

be deprived of life, liberty or property, without due process of law, "nor deny to any

person within its jurisdiction the equal protection of the laws."  Amendments V and XIV.

29.     This Court is competent to adjudicate this case, notwithstanding the doctrine of consular

non-reviewability.  The visa denial was not facially legitimate and bona fide.  A

"constitutional challenge to the denial of a visa is entitled to a limited judicial inquiry

regarding the reason for the decision."  However, if the ". . . reasons given is facially

legitimate and bona fide, the decision will not be disturbed." *Bustamonte v. Mukasey*, 531

F.3ed 1059, 1062 (9th Cir. 2008) citing *Kleindienst v. Mandel*, 408 U.S. 753, 2576 (1972).

Where it is ". . . alleged that the consular official did not have a good faith belief in the

truth on which he relied," the facially legitimate and bona fide standard no longer applies.

See *Bustamante v. Mukasey*, 531 F. 3d at 1062.  Also see *Jean v. Nelson*, 472 U.S. 846

(1985) citing *Fiallo v. Bell* , 430 U.S. 787, 793, n. 5 (1977) [with respect to entry

decisions, the Court has refused to characterize the authority of the political branches as

wholly unbridled.  Cases reflect acceptance of a limited judicial responsibility under the

Constitution even with respect to the power of Congress to regulate the admission and

exclusion of aliens].

30.     The decision denying visas to SINGH's family was not done in good faith.  Kulwant

SINGH, elder son, and Gurwinder Kaur, younger daughter, had both testified to the

correct age of each sibling.  CONSULAR OFFICER #2 successfully used threats and

intimidation against Gurwinder to produce an involuntary written confession with birth

dates provided by him, which now appears to be the sole basis for all subsequent denials.

Thereafter, having received tens of objective official documents affirming the correct

ages as originally presented, the CONSULAR OFFICER #2 could not have affirmed his

findings of misrepresentation and the visa denials in good faith.

31.     This Court has jurisdiction, pursuant to 5 U.S.C §702, to review a U.S. agency's coercive, arbitrary, capricious action by a consular officer during the statutory follow-to-join proceeding that resulted in unjustified findings that his family had misrepresented material facts and attempted alien smuggling.  A coerced written confession, against the interests of the "confessor" and contradicted by all available official documentation, provides no reason to deny a visa, rendering the denial without any basis and arbitrary. The arbitrary denial has caused years of stress to resolve the mistake.  Mounting frustration and prolonged unjustified family separation resulted in substantial emotional harm and, in part, SINGH's heart condition.  The U.S. Embassy is not listed as an agency for which the 5 USC is not applicable (cf. §701).

32.     This court has jurisdiction pursuant to §702 in that SINGH has an independent statutory right for a just follow-to-join eligibility determination.  As a skilled worker who obtained U.S. permanent resident status under 8 U.S.C. §1153(c)(3)(i), SINGH's spouse and children "shall be entitled" to the same status, and the same order of consideration, following to join him.  §1153(d).  SINGH's sons and daughters are children. §1153(h)(1-3) [determining whether aliens are children].  Following the order of consideration, a visa became available to SINGH in 2005 when he filed to become a U.S. permanent resident and, at that time, visas were available to his family. §1153(e)(1).  Following adjustment of status by the immigration judge, SINGH immediately filed the I-824 petition with the Attorney General so his family would have his preference status. §1153 (d),(e).  The petition was approved.  Form I-797 attached.  "The Secretary of State shall then authorize the consular officer concerned to grant the preference status." §1154(b).  This Court,

residing in the District of Columbia, cannot deny due process to SINGH, a person within

that jurisdiction. Amendments V and XIV.


EXHAUSTION OF ADMINISTRATIVE REMEDIES

33.    SINGH has sought a fair opportunity for administrative relief for seven years, exhausting

every avenue until June 2, 2014 when any further attempt was clearly futile.  The time

line of his efforts follows.


34.    Having initiated the immigration process for his wife and four children, on July 1, 2009,

SINGH learned that the NVC failed to include daughter Jasveer Kaur and son Kulwant

Singh.  He immediately filed evidence that both were children as defined by CSPA and

requested a fee bill for each.  SINGH repeated requests on  August 11, September 8, and

October 8, 2009.


35.    On October 9, 2009 and in response to SINGH's challenge, National Visa Center

("NVC") wrote that Jasveer and Kulwant were omitted because they were 21 years of age

or older.  SINGH responded again citing the CSPA law affirming Jasveer and Kulwant

remained under 21 years CSPA age and again requested fee bills so that his family could

be interviewed together.  He repeated his request on October 28, 2009.  Receiving no fee

bill for Jasveer and Kulwant, on December 10, 2009, SINGH nevertheless filed fees and

documents for Jasveer and Kulwant along with those for his wife, son Sukhwant and

daughter Gurwinder.

36.     On July 2, 2010, the U.S. Embassy, New Delhi, scheduled a visa interview, but only for

        wife, Surjeet Kaur and the youngest child, Sukhwant Singh.  Nevertheless, SINGH had

        Jasveer (daughter), Gurwinder (daughter) and Kulwant (son) accompany Surjeet and

        Sukhwant to the interview on August 27, 2010.

37.     On February 15, 2011, SINGH learned that the U.S. Embassy, New Delhi, had denied the

        family visas for material misrepresentation (INA 212(a)(6)(C)(1)) and alien smuggling

        (INA 212(A)(6)(e).  The February 11, 2011 denial (ATTACHMENT 1) was addressed to

        his wife Surjeet Kaur and stated:

> Based on the written confession provided by you and a review of
> your case, the consular officer has determined that you
> misrepresented the dates of birth for all of your children in order to
> immigrate to the United States (US). . . . There is no waiver
> available for 212(a)(6)(E) . . . . Please consider this case closed at
> this post.

        SINGH knew there was a mistake.  A written confession by his wife was impossible.  His

        wife was illiterate.

38.     In March 2011, SINGH sought and received statements from each, Gurwinder Kaur,

        Kulwant Singh and his wife, Surjeet Kaur, about what had happened at the interview.

        The details are set forth in the section ADDITIONAL FACTS infra.

39.     March through April, 2011, SINGH sent letters, facsimiles and e-mails to the Chief

        Immigrant Visa Branch in New Delhi and to the U.S. VFS help desk Delhi, requesting a

        copy of the purported written confession by his wife, Surjeet Kaur.  When SINGH

        received a response that the case was returned to Kentucky Consular Center ("KCC") on

February 10, 2011, he inquired of the KCC which subsequently denied having anything related.

40.     In September 2011, SINGH sought a legal determination because it was impossible for his wife to have provided a written confession.  In October 2011, LegalNet (Department of State staff attorney to the U.S. Embassy) responded that the petition was returned to the USCIS Service Center with ". . . a recommendation for review and possible revocation. . . . USCIS can either reaffirm it or issue a notice of intent to revoke.  If the petition is reaffirmed, the State Department will continue processing the case."

41.     On November 18, 2011, another e-mail from LegalNet stated that the September 2011 email was incorrect, and stating that a fraud investigation took place and a confession statement by one of the applicants verified that the ages of all the parties involved were incorrect; this misrepresentation was made in order for applicants Gurwinder Kaur, Sukhwant Singh, Jasveer Kaur, and Kulwant Singh, to procure a visa; and therefore, ". . . the Department concurs in finding them ineligible under 6C1."

42.     December 26, 2011, SINGH receive an email from LegalNet, "Once USCIS receives the petition they should contact the attorney of record to give the opportunity to explain why the petition should not be revoked as part of the revocation request process."

43.     In March 2012, SINGH was admitted to the hospital for coronary artery disease reasonably attributed, in part, to the on-going stress of trying every means to resolve the obvious mistake by the Embassy.

44.     On June 26, 2012, NVC sent a letter to Surjeet Kaur with new numbers identifying her

case.  SINGH wrote asking to clarify if she is to have a fresh DS-Form 3032.  Having

received no clarification or revocation notice, SINGH assumed that the Embassy denials

were being reconsidered.

45.     On July 10, 2012, SINGH inquired of the NVC why forms for his 4 children were not

accompanying Surjeet Kaur's fresh Form 3032.  July 11, 2012, SINGH took the problem

to the American Immigration Lawyers Association ("AILA") listing 17 attempts to

resolve the problem between March, 2011, and December 23, 2011.  August 2, 2012,

SINGH again inquired of NVC about immigrant visas for their children.  On August 21,

2012, NVC issued a single fee bill for Surjeet Kaur.

46.     SINGH sought and obtained affidavits from Surender Singh, resident and appointed

Lambardar of village Chimo, from Head Grand Panchyat (Village Head who serves for

life), and from the Sarpanch, Kuldeep Singh (Village Council Head elected every five

years), each stated that he personally knew the family of Surjeet Kaur and concurred with

each child's date of birth.   None of SINGH's children were married and there had been

no misrepresentation.  (ATTACHMENT NO. 2).  These documents were provided along

with others to the NVC and were available to the Embassy.

47.     On September 10, 2012, SINGH contacted nvcinquiry@state.gov setting out the problem

and attaching 17 documents verifying dates of birth, birth certificates, school records,

census data and  medical records for each of the children.   With one exception, all

documents record the same dates of birth as recorded on the immigrant applications.

Sukhwant Singh's medical report misstated his birth.  The error was immediately noted

by the family, but the hospital could not correct the error because the record had been sent

to the US Embassy.   The hospital's statement and records assured SINGH that the U.S.

Embassy had correct birth dates on the medical records of all other members of his

family, except Sukhwant's age was erroneously recorded as 18 years but correct age was

20 years old.  (ATTACHMENT NO. 3).   On September 24, 2012, NVC put the received

correspondence and documents under review.

48.     Three days later, on September 27, 2012, the NVC issued fee bills to wife and three

children but none to Jasveer Kaur.  October 4, 2012, SINGH sent an e-mail to NVC

explaining that his fourth child, Jasveer Kaur, was protected under CSPA.  NVC replied

directing SINGH to NVCAttorney@state.cov and legalnet@state.gov.  October 17, 2012,

NVC advised that as one of the children was over 21.  The Consulate General would

make a final determination as to whether that alien was protected under CSPA.

49.     October 29, 2012, NVC issued the filing fee bills ($405 each, for Surjeet and all 4

children).  Fees were again paid and the minimum required evidence was submitted on

January 22, 2013.  A second family interview was scheduled for June 17, 2013.

50.     Prior to the June 17, 2013 interview, a woman from the US Embassy telephoned Kulwant

Singh (son), Gurwinder Kaur (daughter),  and three of their neighbors, Surjeet Singh,

Kuldeep Singh, and Gurinder Singh.  SINGH received their written recollections of the

telephone calls via fax on July 2, 2013, which are set forth and discussed in

ADDITIONAL FACTS *infra*.

51.     During these phone calls in early June 2013, all neighbors attested to the number of

SINGH's children, their names, ages, as well as the fact that none were married.  Kulwant

Singh, eldest son, answered extensively about his siblings, their education, his father and the extended family but the woman said Kulwant was lying. She told Kulwant, "when you come to the interview then you must carry school certificate with you." In fact, each did carry his school certificate to the subsequent interview. (ATTACHMENT NO. 4)

52. Calling by telephone, the Embassy woman asked Gurwinder, the younger daughter, to tell her age and that of her siblings. After Gurwinder answered, the woman asked why she had previously said older ages and Gurwinder answered, "I told you truth at that time that I am twenty one years old but you people pressurized me and forced me to write down that my age is twenty six years old."

53. On June 17, 2013, each family member took to the interview a complete package. In addition to the documents the Embassy had required, packages contained a legal memo on CSPA age of all four children, birth certificates from several government departments, school records, Govt of Haryana Ration Card (Govt Family Register), chain of custody statement by Kulwant Singh, medical reports, and the English translations of statements that Kulwant, Gurwinder and Surjeet had given about, and just following, the 2010 immigrant visa interview at the U.S. Embassy.

54. The June 17, 2013 interview was hugely anticipated by SINGH and his family. To his dismay, SINGH learned that, once inside the Embassy, all family members approached the reception room window when called. Gurwinder Kaur, alone, was addressed by the Inspecting Officer. The officer only asked her about the ages of the family. Gurwinder answered verbally and truthfully. The officer said ". . . the age is more than you are

telling.  You are telling a lie so we will not issue a visa to you.  Go and sit down."
Nothing further was said and no one else was questioned.

55.   The interview was at 2:00 p.m. and SINGH's family was out of the Embassy by 2:10 p.m.
For this, purportedly a second interview, SINGH had paid filing fees of $405 for each
member, a total of $2,025, a sum sufficient to have enabled review of the documents
submitted and carried to the second interview.

56.   June 20, 2013, the U.S. Department of State issued a second refusal worksheet for Surjeet
Kaur stating that she was found ineligible to receive a visa as an alien smuggler (INA
Section 212(a)(6)(E)), and a refusal worksheet for each of the 4 children stating that each
was ineligible for a visa for misrepresentation (INA 212(a)(6)(C)(1). (ATTACHMENT
NO. 5)

57.   Immediately, on the same day, SINGH sent an email to support-india@ustraveldocs.com',
'ndfpu@state.gov' with a copy to 'legalnet@travel.state.gov' requesting that the
immigrant visas for SINGH's family not be returned to USCIS until an opportunity to
resolve the apparent problem is resolved.  That night, the U.S. Visa Service Desk
responded requesting additional information.  On July 4, 2013, SINGH sent by email all
the information requested.

58.   After waiting seven (7) months and pursuant to 22CFR 42.81( c), on February 18, 2014,
SINGH wrote to the DOS Office of Public and Diplomatic Liaison asking that the
Division of Legal Advisory Opinions provide an opinion on the immigrant visas for his
family.

59.     On March 19, 2014, SINGH wrote to LegalNet, explaining that he was an employment-based U.S. permanent resident who had been years in the process of enabling his family to join him.

60.     On May 12, 2014, SINGH wrote to the Office of Public and Diplomatic Liaison because there had been no response to the problem.  The letter was sent as a courtesy notice of an intent to seek judicial review.

61.     On  June 2, 2014,  LegalNet forwarded to SINGH the response from the Division of Legal Advisory Opinions. (ATTACHMENT NO. 6)

> "Whether or not your clients intentionally misrepresented their true dates of birth is a factual determination that only a consular officer can decide. If you have new factual arguments regarding the willful nature of your client's misrepresentation, then you may present them to the consular officer for review. Alternatively your client may file a waiver application."

62.     This communication from LegalNet included a scanned copy of a document dated August 27, 2010 written in Hindi on lined paper was signed by Gurwinder Kaur and contained Surjeet's thumb print.  This was the statement the CONSULAR OFFICER #2 had dictated and coerced Gurwinder to write under protest, then ordered her to sign.  This was Surjeet's thumb print, because she was illiterate and followed what her children did.

63.     SINGH understood. The CONSULAR OFFICER #2 made the factual determinations.  Objective official documents had been provided to him.  Initially, the officer claimed his decision was based, in part, on medical records but that was negated by copies of those medical records subsequently obtained from the hospital and submitted.  Gurwinder's involuntary statement was the only evidence provided to support the Embassy's factual

determination that SINGH's children had lied about their ages.  Exhausting yet another

request of CONSULAR OFFICER #2 would be futile.  Comprehensive official evidence

had already been submitted.  The CONSULAR OFFICER #2 knew he had reduced

Gurwinder to tears by coercing her into writing and signing the document over her

objection.  He already had her written and verbal statements stating clearly and

unambiguously that she had been coerced.  He already had Surjeet's statement explaining

and contradicting the consent implied by her thumb print on the document.  He already

had Kulwant Singh's written refusal to write false ages that CONSULAR OFFICER #1

ordered using the same classic coercive technique — if Kulwant did not obey the

CONSULAR OFFICER #1's direct order, then his whole life would be spent to ". . .

bread [*sic*] animals."  Impliedly, if Kulwant did not write as the CONSULAR OFFICER

#1 dictated, he had no future and would live a demeaning life.  More exhaustion in such a

circumstance is not reasonable nor required.  See *McCarthy v. Madigan*, 503 U.S. 140

(1992), *Darby v. Cisneros*, 509 U.S. 137 (1993).

64.     In 2011, the Embassy wrote to Surjeet stating that there was no waiver available for

        212(a)(6)(E).  Contradicting the Embassy statement, on June 2, 2014, LegalNet wrote,

        "Alternatively your client may file a waiver application."

65.     Yet a waiver would be inappropriate, futile and oppressive.   No resolution or information

        would result from filing a waiver that could possibly aid this Court in its task of judicial

        review.  And how can one seek a waiver for one's failure to resist undue and

        overwhelming coercion?

66.     A waiver under INA 212(d)(11) for  alien smuggling (INA 212(a)(6)(E)) by Surjeet Kaur,

        is only applicable if she had intentionally misstated the ages of her children so they might

        obtain a U.S. immigrant visa.  She did not.  As she stated, she is illiterate and knows that

        the papers that were submitted state the birth dates.

67.     A waiver under INA 212(I)(1) for fraud, or misrepresenting a material fact while seeking

        to procure a visa (INA 212(a)(6)(C)(1) is only applicable if SINGH's children had lied

        about their ages.  They had not.  The school records, government ration card, medical

        records, and the affidavits of the local government officials are not all lying about the

        children's ages.  In fact, all official objective evidence supports the ages stated on the visa

        applications.

68.     *Catch 22:*  If each family member were to apply for a waiver, each would have to falsely

        deny his or her correct age and testify to a false age.  Such false conduct would be a true

        misrepresentation in order to obtain an immigrant visa, and preclude issuance of a visa.

        SINGH's family could not and should not do that.

69.     Aside from truth, a waiver would be futile.  Family unity could not be obtained unless

        every one of his family members were granted a waiver.  To obtain a waiver of each

        family member's individual inadmissibility, SINGH must prove extreme hardship to

        himself as to each family member individually.  The bar would be very high.  And no

        court has jurisdiction to review should the waiver be denied.  *Matter of*

        *Cervantes-Gonzalez*, 22 I&N 560,566 (BIA 1999), *aff'd*, *Cervantes-Gonzalez v. INS*, 244

        F3d 1001, 1005-06 (9th Cir. 2001),  8 U.S.C. §1182(i)(2).

70.     Waivers would be unreasonably oppressive, just to overcome a consular's unsupported

        factual determination of birth dates. The filing fee, alone, for each application for waiver,

        Form I-601, is Five Hundred Eighty-five USD ($585).  To waive inadmissibility, the

        family would pay filing fees of $2,925 plus legal and other professional fees.

71.     Thinking that the decision would strengthen his own case, SINGH waited for the U.S.

        Supreme Court decision in *Kerry v. Din*, 576 U.S. ____ (2015).  On review of the *Din*

        decision, SINGH determined to pursue this federal claim, believing the decision did not

        deny his constitutional right, liberty or freedom in family, that truth would prevail and his

        family would be able to join him in the United States.

## ADDITIONAL FACTS

72.     After the August 2010 interview, Kuldeep found his little sister, Gurwinder, crying, "He

        was going to proceed fraud against father and me and I would be saying mother lied.  I

        told that I didn't know anything.  My father had applied for a visa and the officer's dates

        of birth were wrong. I told them true ages but he scared me and forced me to write wrong

        ages."

73.     Gurwinder was referring to CONSULAR OFFICER #2 who had interviewed her in 2010.

        Under the Immigration and Nationality Act (INA), a non-citizen generally may not be

        admitted to the United States without having been issued a visa by a consular officer in

        the Department of State.  8 U.S.C. §§1181(a), 1201(a)(1).  The statute provides the

        officer is to deny a visa when "it appears to the consular officer" that "such alien is

        ineligible to receive a visa . . . under section 1182 of this title, of any other provision of

        law." or if "the consular officer knows or has reasons to believe" that the noncitizen is

ineligible."  8 U.S.C. §1291(g).  The term "reason to believe"  requires a determination

based upon facts or circumstances which would lead a reasonable person to conclude that

the applicant is ineligible . . . .  Consideration shall be given to any evidence submitted

indicating that the ground for a prior refusal of a visa may no longer exist. The burden of

proof is upon the applicant to establish eligibility. . . ." 22 C.F.R. §40.6.

74.   August 27, 2010, had been a day of unbelievable excitement, anticipation, fear and

anxiety.  Surjeet Kaur, wife of SINGH, and his children, Jasveer Kaur, Kulwant Singh,

Gurwinder Kaur and Sukhwant Singh, were at the U.S. Embassy for an interview before a

consular officer.  In 2008, the immigration judge had told SINGH he could apply for his

family to join him in the United States.  Now, two years later, the day had finally arrived.

75.   All the fees had been paid.  Required documents had been submitted.  The interview

appointment date had been scheduled and each family member had carried additional

documents to the interview proving his or her correct age.  Surjeet Kaur and Gurwinder

Kaur were called for an interview in one room.  Gurwinder left crying.

76.   Kuldeep was called to a separate room.  There, CONSULAR OFFICER #1 had ordered

Kuldeep to write false ages.  He refused and left the interview.  No one interviewed

Jasveer Kaur, the elder sister, or Sukhwant, the little brother.

77.   Five months later, when SINGH received the February 2011 denial, he spoke with his

children asking what happened.  Then he asked them to tell a translator who could type

their statements in English.  On March 4, 2011, the statements were faxed to SINGH and

set forth below.  The original faxes are attached. (ATTACHMENT NO. 7)

78.     Gurwinder explained what transpired in the following statement.


> Madam your name?
> My name is Gurwinder Kaur
> You did not seems 21 year old.  You are 26 years old.
> No my age is 21 years old.  You are lying.
> Your age is 26 years old. Accet or not.
> Madam listen me once, if you speak truth your work shall be done after 4
> years and if you told lie your work has never been done.
> No, Sir I did not telling a lie.  I am 21 years old.
> You are again telling a lie.  We shall proceed a case of fraud and we shall
> also call your father in India in fraud case.
> You have wrote on the paper that your age is 26 years old and your sister's
> age is 29 years ol[d] and your brother Kulwant Singh's age is 28 year old
> and
> brother Sukhwant's Singh age is 24 years old.
> Are your mother telling us lie that your age is 26 years old.  Are you not her
> children.
> Madam your age is 21 years old.  In your medical report it is showing your age is
> 26 years old.
> If you don't want that your mother shall go abroad.  If you speak truth then
> your mother shall go abroad otherwise we shall proceed a case of fraud
> against you.
> After that they told me that they will inform me through letter. Take your
> passport copy with you.

79.     Surjeet Kaur's statement of the interview follows:


> What is your age.  My age.
> Your children age.
> I replied that everything mentioned in the papers.  I am illiterate.
> They said all the four children are your.
> They said your son is married.  You have two daughter-in-law in your
> home.
> I replied my san is not married.  My brother-in-law's children are married.
> We all live together in joint family.
> They said me that only I can get Visa.
> I replied that I alone can not want to go abroad.  We shall go together.

80.     Kulwinder's statement of the interview follows.


> My name is Kulwant Singh and your date of birth is 04-09-1987.
> They said me that I seems to old age.
> Told you accurate age.

> After that they gave me pen and paper and also said that your age is not right.
> If you want to go abroad then wrote on paper as we dictate you.
> I did not write.
> After that they said me that you did not want to go abroad.
> I replied yes I want to go.
> If you do not obey our order then your whole life spent to bread animals here.

81. Following SINGH's continued efforts over 3 years, on June 17, 2013, Surjeet, Jasveer, Kulwant, Gurwinder and Sukhwant received another interview notice and were at the U.S. Embassy for a second scheduled interview.

82. The family sat waiting.  A second set of fees had been paid and documents submitted. Each carried tens of documents affirming eligibility to follow-to-join SINGH. When called, the family gathered around one of the glass windows in the waiting room.  A consular officer spoke only to Gurwinder.  Through the window the officer inquired about the ages of each member of the family.  Gurwinder answered verbally and truthfully.  The officer insisted that Gurwinder was lying.  Nothing else.  The family was told to go back and sit down.  End of interview.

83. As previously discussed, there was and is no written or facially correct basis for the 2013 decision.  Nothing referenced all the objective official evidence confirming birth dates as presented.  No evidence was provided to support the stated in-eligibilities.  The attachment to the 2011 letter to Surjeet, stating that she had provided a written confession, was the only document SINGH had ever received as the basis for both the 2011 and 2013 denial letters.

84.    SINGH immediately began his efforts to resolve the obvious problem as detailed in

EXHAUSTION OF REMEDIES above.

85.    Finally, a year after the second visa denial, on June 2, 2014, SINGH finally received a

copy of the alleged "confession" from LegalNet (ATTACHMENT NO. 6) which stated:

> [T]he consular officer determined that your clients willfully
> misrepresented their dates of birth on their 2010 immigrant visa
> applications. . . . Whether or not your clients intentionally
> misrepresented their true dates of birth is a factual determination
> that only a consular officer can decide.  If you have new factual
> arguments regarding the willful nature of your client's
> misrepresentation, then you may present them to the consular
> officer for review.  Alternatively your client may file a waiver
> application.
>
> Attached please find a scanned copy of the written confession
> made by your client.

The attached "confession" was written in Hindi with an English translation that stated:

> My name is Gurwinder Kaur and my date of birth as mentioned on
> my passport is 12-March-1989.  My mother name is Surjit
> Kaur and my father name is Nirmal.  In reality I am 26
> years old.  My younger brother Sukhwant is 24 years old.
> My elder brother Kulwant Singh is two years older than me
> and his real age is 28 years.  My eldest sister Jasvir Kaur is
> three years older than me and her real age is 29 years.  I am
> writing this true statement with my own will and with the
> consent of my mother Surjeet Kaur.

> Signed/                          Thumb impression/

> Gurvinder Kaur                   Surjeet Kaur (Attached)

86.    SINGH asked how Gurwinder had written and signed such a document and how his wife

had given her thumb print.  Surjeet stated that she was illiterate and did what her children

did.  Gurwinder had signed and so Surjeet pressed her thumb.  Gurwinder explained that

she was scared and believed that if she did not write as the CONSULAR OFFICER #2 dictated, she and her father would be in jail for fraud.  CONSULAR OFFICER #2 had been very powerful and she had been only 21 years old at that time and without knowledge of what the officer might be able to do to her.  She explained to her father that she was two years older, stronger and when, again, at the window in 2013, she was pressured to lie about their ages, she did not.

### COUNT I - Procedural Due Process Violation

87.   SINGH incorporates by reference into this Count, all statements appearing in paragraphs 1 - 86  of this Complaint.

88.   Constitutional due process requires that adjudicative decisions by government officials are supported by evidence.  See, e.g., _Superintendent v. Hill_, 472 U.S. 445, 455 (1985) [". . . a governmental decision resulting in the loss of an important liberty interest violates due process if the decision is not supported by any evidence."]; _Schware v. Bd. of Bar Exam'rs,_ 353 U.S. 232, 239 (1957) [Even in applying permissible standards, officers of a State cannot infringe a liberty interest without a factual basis).

89.   CONSULAR OFFICER #2 knowingly found misrepresentation of ages without factual basis.  The correct ages of SINGH's children were filed on Form I-485 with the USCIS in 2005, approved by the Immigration Judge in 2008.  This approved petition was not revoked by USCIS when the CONSULAR returned it in 2011.  SINGH has never received any notice revoking the petition for his family, presumably because the birth certificates, government rational card, school records, medical records and official affidavits affirmed the ages submitted to the USCIS, approved by the immigration judge,

included on the applications for visas and testified to by Kulwant and Gurwinder during

their telephonic and personal interviews.

90.   That bad faith conduct violated and continues to violate SINGH's constitutionally

protected right, liberty or freedom in family, as identified in "Jurisdiction" above, and has

deprived SINGH of life with his family.  Separation has resulted in substantial and

continuing emotional and physical injury to SINGH, an employment-based U.S. lawful

permanent resident.  SINGH's March 2012 hospitalization for coronary disease (heart

attack), in part, resulted from the stress caused by the delays and failure of the Embassy to

provide the evidence of the alleged misrepresentation, or any other opportunity for

clarification or rebuttal of the assumed evidence.

91.   SINGH has provided substantial objective official evidence of birth dates.  No evidence

of any contrary birth dates has ever been provided or alleged to SINGH.  Without notice

of the basis of any contrary dates, SINGH has had no opportunity to be heard on any

contrary dates.  Therefore, the remedy is remand with notice of the issue, i.e. any

contradictory birth dates, and an opportunity to address them.

## COUNT II - Equal Protection Violation.

92.   SINGH incorporates by reference into this Count all statements appearing in paragraphs 1

- 86  of this Complaint.

93.   SINGH's equal protection guarantee under the Constitution requires that the same

standard for making a factual determination be applied in all consular proceedings within

the Department of State.  The standard, pursuant to 22 C.F.R. 40.6, requires a

determination be based upon facts or circumstances which would lead a reasonable person to conclude that the applicant is ineligible. The conclusion must consider the evidence that SINGH submitted following the 2011 visa denial and before the 2013 denials.

94.     That standard was not applied.  CONSULAR OFFICER #2, in the 2010 interview, claimed medical records and an investigation proved Gurwinder lied about her's and her siblings' ages.  He induced Gurwinder (and derivatively Surjeet Kaur) "to confess" by threatening her family, both her father and her mother, with immediate harm, a classic tactic known to create false confessions.  SINGH obtained the actual hospital medical records (ATTACHMENT NO. 3) allegedly cited by CONSULAR OFFICER #2  and statements from the Embassy telephonic investigation. (ATTACHMENT NO. 8)  Neither the medical records nor statements apparently made in the course of the Embassy investigation support the Embassy's assertion that Gurwinder was lying.  The Embassy has produced no other medical records or valid documentation.  Thus, imaginary or "pretend" medical records and Embassy investigation used, in part, to coerce SINGH's daughter "to confess," cannot considered to be viable facts or circumstances for finding misrepresentation of the children's ages.

95.     Gurwinder's written "confession" is the only basis for the Embassy finding of misrepresentation.  Within the context, as evidenced by the several statements in evidence, Gurwinder Kaur's confession cannot reasonably be knowingly and voluntarily made.  Thus, the only facts upon which a determination of age could reasonably be made are the documents submitted by SINGH — birth certificates, school records, government

rational card (government family registration), medical records and affidavits from

elected as well as appointed village officials.

96.  No reasonable person would find misrepresentation of ages on the evidence presented and

available to the Embassy.   CONSULAR OFFICER #2's failure to apply the same

standard for factual determinations had no lawful relationship to the goal of identifying

ineligible recipients for immigrant visas.

## COUNT IV - Violation of Immigration Law

97.  SINGH incorporates by reference into this Count all statements appearing in paragraphs 1

- 86   of this Complaint.

98.  SINGH is a skilled worker who obtained U.S. permanent resident status under 8 U.S.C.

§1153(c)(3)(i).  As such, SINGH's spouse and children "shall be entitled" to the same

status, and the same order of consideration, following to join him.  §1153(d).  SINGH's

sons and daughters are children. §1153(h)(1-3) [determining whether aliens are children].

Following the order of consideration, a visa became available to SINGH in 2005 and,

thus, visas were also available to his family. §1153(e)(1).  SINGH immediately filed the

I-824 petition with the Attorney General so his family would have his status and

consideration. §1153(d).  The petition was approved.  Form I-797 attached.  "The

Secretary of State shall then authorize the consular officer concerned to grant the

preference status." §1154(b).

99.  By the arbitrary decision of CONSULAR OFFICER #2, finding found SINGH's wife and

children to be ineligible to follow-to-join him in the United States, SINGH was deprived

of his statutory right to the immigration of his eligible family members.  "It seems counterintuitive to review a cabinet officer's discretionary decision, but not a consular officer's decision as to statutory ineligibility."  _American Academy of Religion v. Napolitano_, 573 F.3d 115, 124 (2009).

### COUNT III - APA Violation

100.    SINGH incorporates by reference into this Count all statements appearing in paragraphs 1 - 86 of this Complaint.

101.     Independently, SINGH has a statutory right as an employment-based U.S. permanent resident.  By statute, consular officers are authorized to grant SINGH's preference status to his family members.  _See_ Count II above.  This statutory obligation satisfies the requirement under the APA (5 USC §702) that plaintiff have an independent right to adjudication.

102.    The decision of CONSULAR OFFICER #2 was arbitrary, coercive, capricious, and denied SINGH the liberty of living with his family by failing to use the reasonable person standard in determining whether the children had misrepresented their ages.  After all the evidence submitted, the final denial was a measured legal determination made contrary to all that evidence, an act that cannot be done negligently.  The Embassy knew or should have known that the denial was without evidence (this, in bad faith).  As a result, SINGH was emotionally and physically injured.  Judicial review with remand is the opportunity to reunite the family and rectify the injustice done by the CONSULAR OFFICER #2.

<u>COUNT  IV - Failure to Comply with Agency Policy and Procedures</u>

103.    SINGH incorporates by reference into this Count all statements appearing in paragraphs 1

- 86 of this Complaint.

104.    Failure to comply with agency policy and procedures is further evidence of illegal

conduct that resulted in injury to SINGH.  The approved petition by *Bombay Palace*,

Form I-140, formed the basis for the dependent visas for SINGH's family. The applicant

for an immigrant visa ". . . shall be required to appear personally before a consular

officer" (22CFR §42.62(a)) and ". . . must be interviewed by a consular officer . . . ." 22

CFR §42.62(b).   Consular officers are to review,  not re-adjudicate petitions.  9 FAM

42.43 (1)(b).  Jasveer Kaur and Sukhwant Singh appeared but were never interviewed in

2010.  In 2013, all Singh family members appeared but only Gurwinder Kaur was

questioned.

105.    Upon applying for an immigrant visa, each applicant is registered as using one of the

available visas in the appropriate category.  Upon termination the registration, " . . . the

National Visa Center (NVC) shall notify the alien of termination." 22 CFR §42.83( c).

None of the family members has received notification of termination.  Either a visa

remains allocated to each family member or there has been non-compliance.

106.    When a consular officer has reason to believe misrepresentation has occurred, he ". . .

shall suspend action in a petition case and return the petition with a report of the facts for

reconsideration by the DHS . . . ." (22 CFR §42.43)   Before seeking to revoke a petition:

(a) there should be substantial evidence supporting return not previously considered by

DHS: (b) the memo supporting the petition return must clearly show the factual and

concrete reasons for recommending revocation: and ( c) the applicant must be provided in writing as full an explanation as possible of the legal and factual bases for visa denial and petition return. Cable DOS 04-State-41682 (Feb. 25, 2004).  The consular officer shall terminate the case only ". . .  upon receipt from DHS of notice of revokation." 22 CFR §42.43.

107.    In order to find an alien inadmissible for misrepresentation, it must be determined that the misrepresentation was willfully made.  *See* 9 FAM 40.63.  An alien is responsible for her misrepresentation ". . . unless it is found that the alien lacked the capacity to exercise judgment." 9 FAM 40.63 N5.2.  Once a misrepresentation " . . . was made in securing a visa, the burden is on the person making the misrepresentation to establish that had you [consular officer] known the truth, a refusal of a visa could not properly have been made. Be receptive to any further evidence the alien may provide in order to ensure that a proper finding has been made." 9 FAM 40.63 N6.3-5.

108.     CONSULAR OFFICER #2 could not show substantial evidence supporting or clearly showing factual and concrete reasons for revocation.  All he knowingly had was an involuntary confession.   Gurwinder's statements about the 2010 interview prevents any reasonable person from finding that she had willfully confessed to misrepresentation of material facts.  The only misrepresentation was her involuntary written confession for which the CONSULAR OFFICER #2 knew, or should have known from the evidence submitted, she lacked the capacity to be responsible.

109.    As set forth in the policy and regulations stated above, Gurwinder lacked the capacity to exercise judgment at the 2011 interview.  She was a 21-year-old from a little village with

formal schooling through 6th class in middle school being bullied by a powerful man from

the U.S. Embassy, who threatened that her father would be brought back to India for

fraud, and unless she confessed, she would be saying that her mother lied.   Her mother's

presence at the interview did not add to Gurwinder's capacity to exercise judgment or

help limit excessive use of verbal force by CONSULAR OFFICER #2.  Because Surjeet

Kaur is illiterate, she could only depend upon and follow what her daughter felt

compelled to do in her best interest as defined and ordered by the officer.

110.  When, after all the efforts SINGH made in providing additional evidence and asserting

error, the Embassy reconsidered the 2011refusal of the visas, it charged SINGH an

application fee in violation of 8 CFR §42.81(e) which provides ". . . an additional

application fee shall not be required."

111.   At the consular interview in 2013, it was apparent no real reconsideration of the evidence

was conducted since only SINGH's daughter Gurwinder was interviewed, and with

increased capacity and understanding of the coercive deceit practiced by the consular

officer, Gurwinder did not "confess" or misrepresent her's and siblings' ages despite the

renewed attempt as set forth above in ADDITIONAL FACTS.

112.  By any measure of the evidence, SINGH has carried his burden to establish that, had the

matter been considered by an unbiased consular officer, a refusal of a visa could not

properly have been made. See 9 FAM 40.63 N5.2.  The procedure required for factual

review and consideration of the documentary evidence was not followed, fees were

illegally charged, and it seems apparent that no review of supporting facts was ever

conducted.

113.   Based on the available evidence, the regulations, and policy set forth above, the proper

procedures for adjudication of SINGH's family visas were not followed and CONSULAR

OFFICER #2 acted illegally.

## RELIEF

114.   SINGH seeks remand and asks this court to compel agency action unlawfully withheld, in

particular, the immediate issuance of immigrant visas to his family members, or proper

factual determination of their eligibility.  5 U.S.C. §706(1).  This action, a just follow-to-

join visa issuance, is legally required by 8 U.S.C. §1153 and 1154(b).

115.   Due to the prolonged and inordinate delay that has separated this family, SINGH seeks

this action on an expedited basis.

Respectfully submitted,

_____/s/_____

Steffanie J. Lewis, DC Bar #373078
The International Business Law Firm, PC
1915 Eye Street, NW, Suite 500
Washington, DC 20006-2118
Telephone: 202 296 1111
Facsimile:  202 296 1175
Email: slewis@iblf.com

May 16, 2016.